IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

       Plaintiff,

   v.

JOHN BURTON,

       Defendants.

Criminal No. 19-0289
ELECTRONICALLY FILED

# MEMORANDUM OPINION

Before the Court is Defendant's counseled motion for reduction of sentence which he filed pursuant to 18 U.S.C. § 3582(c)(2). ECF 202. The Government filed a response opposing his request (ECF 205), and Defendant filed a reply (ECF 211). For the reasons set forth below, the Court will deny Defendant's motion.

**I. Case History**

    **A. Defendant's 2020 Sentence (2:19-cr-00289)**

Because the Court writes primarily for the parties, the case history will be truncated and derived from the presentence investigation report (ECF 113), unless otherwise indicated.

        **1. Procedural History**

In 2020, pursuant to a plea agreement, Defendant pled guilty to Counts 6 and 7 of an indictment. Count 6 charged Defendant with possession with intent to distribute and/or distribution of heroin, fentanyl, valeryl fentanyl, and cocaine base, while Count 7 charged Defendant with possession of a firearm in furtherance of a drug trafficking crime.

On December 22, 2020, this Court sentenced Defendant to 70 months' imprisonment at Count 6 ("the drug crime")[1], and 60 months' imprisonment at Count 7 ("the gun crime"), to run consecutively[2], for a total term of 130 months.  At the time of sentencing, U.S.S.G. §4A1.1 required two points to be added to Defendant's criminal history score because Defendant had committed both offenses (Counts 6 and 7), while he was under federal supervised release for a previous federal drug crime at docket number 11-cr-00045.[3]  This particular guideline has since been amended – retroactively – allowing this Court to consider whether to reduce Defendant's criminal history score by these same two points.

Defendant's instant motion to reduce his sentence based on the revised U.S.S.G. §4A1.1, asks this Court to reduce his current sentence by 13 months – taking his total imprisonment time from 130 months to 117 months.  Defendant acknowledges that the 60 months' imprisonment for his gun crime is a statutorily imposed amount of time which cannot be altered, and agrees that it must run consecutively to any time assigned to Defendant for the drug crime. See ECF 202, p. 2.

**2. Factual History**

As of August 26, 2019, there was an outstanding federal arrest warrant for Defendant because of a supervised release violation petition that had been filed on June 17, 2019.[4]  On

---

[1] The guideline range for Defendant's offense at Count 6 was 70 to 87 months' imprisonment.

[2] At Count 7, Defendant was sentenced to serve a mandatory, consecutive minimum of 60 months, pursuant to 18 U.S.C. § 924.

[3] On June 7, 2020, Defendant filed written objections to the portion of his Presentence Investigation Report which added the two points to Defendant's criminal history score as was required by U.S.S.G. § 4A1.1 for committing the instant offenses while he was "under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." ECF 117. Defendant raised two objections: (1) whether he had obstructed justice in the instant case, and (2) the commencement date of his supervised release in federal case number 11-cr-00045. Id. Thus, the instant § 4A1.1 argument Defendant raises herein is a novel one.

[4] The "outstanding federal arrest warrant" for Defendant and the related supervised release violation petition of June 17, 2019, arose from the following facts which this Court obtained from the Co-

August 26, 2019, Pittsburgh Police Detectives and the United States Marshals Service located and arrested Defendant. On that date, members of the arrest team spotted Defendant exiting from a vehicle and entering an apartment building in Allegheny County. After establishing a perimeter around the building, some team members went to the door of the apartment building and called out to Defendant, identifying themselves as police.

Defendant's apartment door was open, and he could be seen near the door of his apartment. Defendant engaged in conversation with the team members who were still at the front door of the building. As they spoke, Defendant went inside his apartment and out of view of the team multiple times, but eventually returned to the area near the door of his apartment. As the team members were attempting to persuade Defendant to surrender, they could smell something burning as well as a strong bleach odor.

Defendant eventually came out of his apartment and was taken into custody. He possessed $2,994.15 on his person. A federal search warrant was obtained and over 40 bricks containing hundreds of stamp bags and a bag of raw powder were found inside his apartment. The contents of the bricks and the bag of powder were lab tested and confirmed to contain various quantities of heroin, fentanyl, acetyl fentanyl, and valeryl fentanyl. In addition, a relatively small quantity of crack cocaine was located inside the apartment. A loaded and stolen

---

Defendant's (Nico Nixon's) Presentence Investigation Report in the instant case (ECF 107) as follows: On June 14, 2019, Pittsburgh Police Officers observed a drug deal occur from a car that was parked along the street on Pittsburgh's North Side. Nico Nixon (driver) and Co-Defendant, Burton (passenger) sold a brick containing a mixture of fentanyl and heroin to a customer who was standing outside the car. The officers immediately obtained the brick and stopped Nixon's car, arresting Nixon and Defendant on state drug dealing charges. At the time of this arrest, Nixon and Defendant possessed several cell phones and $1,869.00 in cash. Data from one of the cell phones revealed that Nixon and Defendant agreed to purchase what was referred to as an "M16" rifle for $700 in April, 2019.  Nixon and Defendant posted bond on their June 14, 2019, state drug charges and before the United States Probation Office could record violation detainers on them at the Allegheny County Jail, the two men became fugitives. Defendant was still a fugitive on August 26, 2019, when he was apprehended by law enforcement.

.40 caliber Smith & Wesson pistol, a loaded and stolen 9mm Smith & Wesson pistol, and a loaded and stolen 9mm Cobray pistol (with an extended magazine containing 35 rounds) were also located inside the apartment along with items in the bedroom linking Defendant to the apartment. The guns and drugs were located in the same bedroom area of the apartment.

Officers also found Defendant's damaged iPhone inside the apartment's kitchen sink which appeared to have been bleached and/or burnt. Investigators attempted to access the iPhone to review the data on it, but, because of the level and nature of the damage, none of the data could be accessed. During a phone call on August 27, 2019, while an inmate in the Allegheny County Jail, Defendant acknowledged intentionally breaking his phone.

As noted above, on December 22, 2020, this Court sentenced Defendant serve to 70 months' imprisonment at Count 6 ("the drug crime"), and 60 months imprisonment at Count 7 ("the gun crime"), to run consecutively, for a total term of 130 months.

**B. Defendant's 2012 Sentence (2:11-cr-00045)**

As noted above, when Defendant was first arrested on June 14, 2019, on state charges, posted bond, became a fugitive, and was again arrested on August 26, 2019, on federal charges, Defendant was serving a term of supervised release for a prior heroin trafficking conviction (at case number 2:11-cr-00045, hereinafter the "2011 federal case"). Defendant was convicted in the 2011 federal case for conspiring to distribute at least 100 grams of a mixture and substance containing a detectable amount of heroin.[5] On June 13, 2012, the Court sentenced Defendant to 46 months' imprisonment and three years of supervised release.

---

[5] Defendant's Presentence Investigation Report notes that Defendant committed the heroin trafficking crime which formed the basis of his 2011 federal case while serving a three-year term of state parole, having pled guilty in 2009 to state charges for carrying a firearm without a license. See case no. 2:11-cr-00045, at docket entry number 846, p. 19.

4

Defendant completed the incarceration portion of his 2012 sentence for the 32011 federal crime, on July 29, 2014. [ECF 162](ECF 162) p. 7. After being released from federal custody on July 29, 2014, Defendant immediately went into state custody and was not released from state custody until November 7, 2018.[6] [ECF 162](ECF 162), [ECF 161-1](ECF 161-1), [ECF 161](ECF 161)- 2, and [ECF 161-3](ECF 161-3).

As this Court noted above, on June 14, 2019, police observed Defendant and his Co-defendant, Nico Nixon sell a brick containing a mixture of fentanyl and heroin to a customer who was standing outside their car. The officers immediately obtained the brick and stopped Nixon's car, arresting Nixon and Defendant on state drug dealing charges. Because Defendant was arrested while still serving his three-year term of federal supervised release (which commenced on November 7, 2018), Defendant's probation officer filed a petition for warrant or show cause hearing for offender under supervision.

Finally, when Defendant was arrested, he possessed several cell phones, one of which revealed that Nixon and Defendant agreed to purchase an "M16" rifle for $700 in April, 2019 After Defendant posted bond on his June 14, 2019, state drug charges but before the United States Probation Office could record a violation detainer on him at the Allegheny County Jail, Defendant became a fugitive and remained so until August 26, 2019, when he was apprehended by law enforcement.

**II. Analysis**

**A. Applicable Law Governing Eligibility**

Title 18, United States Code, Section 3582(c)(2) indicates that a defendant who has been sentenced to a term of imprisonment based upon a sentencing range that has been subsequently

---

[6] While imprisoned on this state custodial sentence, Defendant was caught in possession of a controlled substance, which extended his state term of imprisonment for another six months.

lowered by the United States Sentencing Commission, may request, and a Court may grant, a reduction to his sentence (after considering the 18 U.S.C. § 3553(a) factors), if such a reduction is consistent with the applicable policy statements issued by the Commission. The policy statements at issue are set forth at U.S.S.G. § 1B1.10, which, allow this Court to reduce Defendant's sentence, at its discretion.

In *Dillon v. U.S.*, 560 U.S. 817 (2010), the United States Supreme Court established a "two-step inquiry" for determining whether a reduction of sentence under 18 U.S.C. § 3582(c) is warranted. At step one, the court is "to follow the Commission's instructions from § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Id*. at 826. Section § 1B1.10(b)(1) instructs a court to "determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (d) had been in effect at the time the defendant was sentenced. In making such determination, the court shall substitute only the amendments listed in subsection (d) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." § 1B1.10(b)(1). "At step two of the inquiry, § 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." *Dillon*, 560 U.S. at 827.

Based upon the foregoing law, this Court finds that Defendant meets step one of the two-part *Dillon* inquiry – *i.e.,* the amended guideline range that would have been applicable to this Defendant if the amendment(s) to the guidelines listed in subsection (d) had been in effect at the time Defendant was sentenced.

6

**B. Despite Defendant's Eligibility, Application of the Section 3553(a) Factors Weigh Against a Sentence Reduction**

Defendant's sentence in the instant case resulted in him having to serve 70 months' imprisonment at Count 6, and 60 months' imprisonment at Count 7, consecutively, for a total term of imprisonment of 130 months. As noted above, at the time Defendant committed the crimes in this case he was on supervised release for crimes emanating from a 2011 federal case, and thus, this Court revoked Defendant's supervised release in the 2011 case, sentencing him to an additional 12 months of incarceration to run consecutive to the 130 months' imprisonment term the Court imposed in the instant matter. Defendant's motion asks this Court reduce Defendant's sentence at Count 6 from 70 months to 57 months.[7]

Based upon consideration of the relevant sentencing factors set forth in 18 U.S.C. § 3553(a), the Court finds that a sentence reduction of any amount at to Count 6 is not warranted in this case.  To the contrary, the Court hereby determines that the 130 months' total imprisonment term in the instant case, and the 12 months of incarceration to run consecutive to the 130 months' imprisonment term in the 2011 case remains sufficient, but not greater than is necessary, to comply with the goals of sentencing, as set forth in 18 U.S.C. § 3553(a)(2), including that the sentence reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes by this Defendant for the reasons set forth below.

---

[7] Defendant had received two points which were added to his criminal–history score resulting in a criminal history score of "10" which placed him in a criminal history category of "V".  With the two-point reduction described in Amendment 821, Defendant's criminal history score is likewise reduced placing him in a criminal history category of "IV."  This in turn reduces Defendant's guideline range from 70–87 months to 57–71 months.  Defendant suggests that because this Court set Defendant's term of imprisonment at the lowest end of the guideline range as to Count 6, it should now reduce his term of imprisonment to the lowest end of the amended guideline range. However, as will be discussed, *infra.*, this is not how the Court determined that 70 months at Count 6 was an appropriate term of imprisonment.

7

First, the Court reconsiders nature and circumstances of Defendant's instant offenses. At the time of his arrest in this case, Defendant was a fugitive. When the police arrived at Defendant's apartment building, and after they made their presence known to Defendant, he immediately destroyed his iPhone in the kitchen sink by burning and bleaching it, before surrendering to the police. Once Defendant was arrested, the police confiscated over 40 bricks containing hundreds of stamp bags and a bag of raw powder from inside the apartment. The bricks and the bag of powder contained heroin and three different forms of fentanyl. There was also some crack cocaine in Defendant's apartment. Moreover, police also found three different loaded and stolen handguns in Defendant's apartment. These facts, taken alone, paint an especially egregious picture and warrant the sentence this Court originally ordered Defendant to serve.

Next, this Court reconsiders Defendant's criminal and personal histories in light of his sentence reduction request. Defendant began his criminal activity as a juvenile, when, at age 14, Defendant was adjudicated delinquent for firearms violations. This adjudication arose when Defendant tossed a loaded and stolen .380 semiautomatic handgun as he ran from the police. At age 15, Defendant was adjudicated delinquent twice – once for possessing marijuana and once for receiving stolen property and possession of heroin. At age 17, Defendant was adjudicated delinquent for possession with intent to deliver heroin. Upon reaching adulthood, Defendant, at age 18, pled guilty twice – once for possession of marijuana, and once for possession of heroin. At age 19, Defendant pled guilty to carrying a firearm without a license when he was caught in possession of a Ruger .45 caliber semi-automatic pistol.

Defendant committed his 2011 federal crime while serving a three-year term of state court probation for his age-19, firearms crime. After being released from federal prison for his

2011 federal crime, Defendant immediately went into state custody for violating his three-year term of state parole when he committed the 2011 federal crime. While imprisoned, serving his state term of imprisonment for his parole violation, Defendant was caught in possession of a controlled substance, which extended his state term of imprisonment for another six months. After being released from state prison, Defendant (finally) began his supervised release on November 7, 2018, and shortly thereafter committed the instant offenses for which this Court sentenced Defendant to 70 months at Count 6, and 60 months at Count 7.

Based on this criminal history, the Court still finds Defendant to have a lengthy criminal "guns and drugs" history. Defendant's criminal history also demonstrates his complete lack of regard for the law considering that he continued to re-offend while on probation and supervised release for his prior crimes. Defendant also demonstrated his complete disregard for the law when he burned and bleached his cell phone in his apartment before turning himself over to the police.

This Court's re-examination of these § 3553 factors confirm that 70 months at Count 6 was an appropriate term of imprisonment given the nature of this offense, Defendant's criminal history, his utter disregard for the law, and the need to protect the public from further crimes.

## III. Conclusion

Based on the foregoing law and authority, the Court finds that Defendant is eligible for relief under Amendment 821 but will deny his request for same because the § 3553 factors weigh against a reduction. An Order of Court denying Defendant's motion shall be filed contemporaneously herewith.

s/Arthur J. Schwab
ARTHUR J. SCHWAB
United States District Judge

Dated: May 2, 2024

cc:    All ECF Registered Counsel of Record